**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **PENSON FINANCIAL SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO. 3:09-cv-1899-O** |
| | § | |
| **SOLARIS OPPORTUNITY FUND, LP,** | § | |
| | § | |
| **Defendant.** | § | |

**BRIEF IN SUPPORT OF THE RESPONSE OF**
**PENSON FINANCIAL SERVICES, INC. TO DEFENDANT'S**
**MOTON TO DISMISS OR ALTERNATIVELY, TRANSFER VENUE**

Respectfully submitted,

        /s/ Steven H. Thomas
_____
**THOMAS W. CRADDOCK**
Texas State Bar No. 04695800
**STEVEN H. THOMAS**
Texas State Bar No. 19868890

**MᴄGᴜɪʀᴇ Cʀᴀᴅᴅᴏᴄᴋ & Sᴛʀᴏᴛʜᴇʀ, P.C.**
500 N. Akard Street, Suite 3550
Dallas, TX 75201
Phone: 214.954.6800
Fax: 214.954.6850
E-mail: tcraddock@mcslaw.com
E-mail: sthomas@mcslaw.com

***ATTORNEYS FOR PLAINTIFF, PENSON***
***FINANCIAL SERVICES, INC.***

**BRIEF IN SUPPORT OF THE RESPONSE OF**
**PENSON FINANCIAL SERVICES, INC. TO DEFENDANT'S**
**MOTON TO DISMISS OR ALTERNATIVELY, TRANSFER VENUE**

Penson Financial Services, Inc. ("Penson") hereby files its Brief (this "Response Brief") in support of Penson's response to the Motion To Dismiss Or Alternatively, Transfer Venue (the "Motion") filed by Solaris Opportunity Fund, LP ("Solaris"). This Response Brief is supported by the Affidavits of Bart McCain (the "McCain Affidavit") and Steven H. Thomas (the "Thomas Affidavit"), which have been filed contemporaneously herewith in the Response Brief Appendix (the "Appendix").

**SUMMARY OF BRIEF**

Solaris is simply trying to delay the confirmation of the FINRA Award. There are no venue issues because there are no witnesses or evidence to be presented. Jurisdiction and venue are established in the Northern District, and the Motion should be denied. Moreover, under the first-to-file rule, this Court is the appropriate court to hear this dispute and the action filed by Solaris in the Northern District of Illinois should be dismissed, transferred or stayed under principles of comity.

# TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................1

PROCEDURAL BACKGROUND ..............................................................................4

ARGUMENT AND AUTHORITIES ..........................................................................6

    A.    Venue is proper in the Northern District of Texas ....................................6

        1.    Solaris resides in the Northern District of Texas ...........................6

        2.    A substantial part of the claim occurred in the
               Northern District of Texas ............................................................9

    B.    Transfer is not appropriate under 28 U.S.C. § 1404(a) .............................10

        1.    Standards ......................................................................................10

        2.    Analysis .......................................................................................12

               (A)    The action could have been brought in Chicago ................12

               (B)    Private and public interest factors weigh
                      against transfer ..................................................................12

                    (1)    Private interest factors .........................................12

                        (a)    The Plaintiff's choice of forum .................12

                        (b)    The convenience of parties
                                and witnesses .............................................13

                        (c)    Witness attendance and trial expenses........15

                        (d)    The location of sources of proof ...............15

                        (e)    The place of the alleged wrong .................15

                        (f)    The availability of compulsory process......15

                        (g)    The possibility of delay and prejudice........16

                      (2)    Interest of justice factors.......................................16

                        (a)    Court congestion.......................................20

(b)     Deciding localized interests at home ..........21

(c)     The forum's familiarity with governing law ...........................................................21

(d)     Avoidance of unnecessary conflict of law problems ............................................21

(3)     Conclusion ...........................................................22

CERTIFICATE OF SERVICE ........................................................................................24

# TABLE OF AUTHORITIES

## CASES

*AdvanceMe, Inc. v. Rapidpay LLC,*
 450 F.Supp.2d 669 (E.D.Tex.2006) ......................................................................... 13

*Arbitration between Intercarbon Bermuda Ltd.* and *Caltex*
*Trading and Transport Corporation,*
 146 F.R.D. 64 (S.D.N.Y. 1993) ........................................................................... 19

*Bates v. C&S Adjusters, Inc.,*
 980 F.2d 865 (2d Cir. 1992) .................................................................................. 9

*Caldwell v. Palmetto State Sav. Bank,*
 811 F.2d 916 (5th Cir.1987) ................................................................................. 11

*Coffey v. Van Dorn Iron Works,*
 796 F.2d 217 (7th Cir. 1986) (citations omitted.) ...................................................... 16

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,*
 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) ............................................ 10

*Continental Grain Co. v. The FBL-585,*
 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960) ................................... 17

*Eastman Med. Prod. Inc. v. E.R. Squibb & Sons, Inc.,*
 199 F.Supp.2d 590 (N.D.Tex.2002) ................................................................... 13-14

*First of Mich. Corp. v. Bramlet,*
 141 F.3d 260 (6th Cir. 1998) .................................................................................. 9

*Graf v. Tastemaker,*
 907 F. Supp. 1473 (D. Colo. 1995) ......................................................................... 6

*Gulf Ins. Co. v. Glasbrenner,*
 417 F.3d 353 (2d Cir. 2005) ................................................................................... 9

*Gulf Oil Corp. v. Gilbert,*
 30 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ............................................. 11

*IBEW-NECA Southwestern Health and Benefit Fund v. Gurule,*
 2003 WL 21281652, at *5 (N.D.Tex. May 22, 2003) (Ramirez, Magistrate J.) ............ 15

*In Re: Horseshoe Entertainment,*
 337 F.3d 429(5th Cir. 2003) cert. denied,
 540 U.S. 1049, 124 S.Ct. 826, 157 L.Ed.2d 698 ..................................................11, 20

*In re Volkswagen AG,*
 371 F.3d 201 (5th Cir.2004) ........................................................................ 11-12

*Injection Research Specialists v. Polaris Industries, L.P.,*
 759 F. Supp 1511 (D. Colo. 1991) ...................................................................... 6

*Moncrief Oil International v. Oao Gazprom,*
 481 F.3d 309 (5th Cir. 2007) ............................................................................. 7

*Motosky v. Manning,*
 2007 WL 1512027, at *2 (W.D.Tex.2007) .......................................................... 10

*Pecoraro v. Sky Ranch for Boys, Inc.,*
 340 F.3d 558 (8th Cir. 2003) ............................................................................. 9

*Penrod Drilling Co. v. Johnson,*
 414 F.2d 1217 (5th Cir. 1969) ........................................................................... 7

*Peteet v. Dow Chem. Co.,*
 868 F.2d 1428 (5th Cir.1989) ........................................................................... 11

*Save Power Ltd. v. Syntek Fin. Corp.,*
 121 F.3d 947 (5th Cir.1997) .......................................................................... 17-18

*Scheble v. Davenport,*
 2007 WL 1893364, at *3 (N.D. Tex. June 29, 2007) (Lynn, J.) ................................. 13

*S & B Engineers and Constructors, Ltd. v. Alstom Power, Inc.,*
 2004 WL 2360034 (N.D. Tex. October 19, 2004) ............................................... 18-19

*Semmes Motors, Inc. v. Ford Motor Co.,*
 429 F.2d 1197 (2nd Cir. 1970) .......................................................................... 20

*Spiegelberg v. Collegiate Licensing Co.,*
 402 F.Supp.2d 786 (W.D.Tex.2005) ................................................................12, 14

*Stewart Org., Inc. v. Ricoh Corp.,*
 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ........................................ 10

*Sutter Corp. v. P & P Indus., Inc.,*
 125 F.3d 914 (5th Cir.1997) .......................................................................... 17-18

*Time, Inc. v. Manning,*
    366 F.2d 690 (5th Cir.1966) .......................................................................... 11-12

*Transfirst Holdings, Inc. v. Phillips,*
    2007 WL 631276, at *3 (N.D. Tex. March 1, 2007) .................................... 6

*Uffner v. La Reunion Francaise, S.A.,*
    244 F.3d 38 (1st Cir. 2001) .................................................................. 9

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*
    751 F.2d 721 (5th Cir.1985) ............................................................... 17

*White Motor Corporation v. International Union,*
    365 F.Supp. 314 (S.D.N.Y. 1973) ..................................................... 19-20

*Yahoo Inc. v. Ligue Contre Le Racisme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) .............................................................. 7

*Young v. Armstrong World Indus., Inc.,*
    601 F.Supp. 399 (N.D.Tex.1984) ..................................................... 12, 14

## STATUTES

28 U.S.C. § 1391(a) ........................................................................................... 6

28 U.S.C. § 1391(c) ........................................................................................... 6

28 U.S.C. § 1404(a) .......................................................................................... 10

## RULES

FEDERAL RULES OF CIVIL PROCEDURE, 13(a) ...................................................... 19

## SECONDARY SOURCES

15 Charles A.Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3854 (1986)..16, 20

**BRIEF IN SUPPORT OF THE RESPONSE OF**
**PENSON FINANCIAL SERVICES, INC. TO DEFENDANT'S**
**MOTON TO DISMISS OR ALTERNATIVELY, TRANSFER VENUE**

**FACTUAL BACKGROUND**

Most of the allegations made by Solaris in its Motion are the same allegations that the arbitrators unanimously rejected as being unfounded of false.  In reality, Solaris affiliated with a third-party broker dealer, Secure Trading Group, LLC ("STG"), to obtain better margins, and when its relationship with STG soured and STG became indebted to Solaris for amounts it could not pay, Solaris sued Penson, the deepest pocket it could find.

Penson is the third largest securities clearing firm in the United States and maintains its headquarters in Dallas, Texas.  McCain Affidavit at ¶2, Appendix page 003.  Although Penson sometimes has certain direct relationships with institutions, hedge funds and registered investment advisors, Penson's customers generally are generally are licensed broker dealers, often called introducing brokers.  *Id.*  Many of the introducing brokers have individuals as customers and, in some instances, investment funds such as Solaris are customers of an introducing broker.  *Id.*

Solaris is a hedge fund that trades in options securities.  Early in 2004, Solaris was a customer of TradePortal Securities ("TradePortal") that cleared its trades through Penson in Dallas, Texas.  To become a customer of TradePortal, Solaris was required to sign certain account documents in which it agreed that any disputes with Penson would be resolved by FINRA arbitration and be governed by Texas law, and that Penson would be entitled to recover its attorneys' fees if it was the prevailing party in any such dispute.  See Customer Account Agreement, Appendix pages 007-008, attached as Exhibit "1" to the Thomas Affidavit, specifically Appendix page 008, paragraphs 6, 8 and 15 (portions highlighted).  Also, attached to

the Thomas Affidavit as Exhibit "2" (for clarity purposes) is a blank copy of the Customer Account Agreement (Appendix pages 009-010 with the same paragraphs 6, 8 and 15 highlighted).

In December 2004, Solaris left TradePortal and became a customer of STG, which also cleared its trades through Penson in Dallas.  Again, Solaris signed documents in which it agreed to FINRA arbitration, Texas law and payment of attorneys' fees in the context of any unsuccessful dispute with Penson.  Solaris received its account statement showing STG as its financial consultant.  See Exhibit "3" of the Thomas Affidavit, Appendix page 011.

As revealed through testimony and other evidence during the arbitration, Solaris moved its business from TradePortal to STG as part of an attempt to obtain more favorable trading margins.  STG had established a "joint back-office" ("JBO") relationship with Penson.  JBO relationships between introducing brokers and clearing firms are not unusual in the securities industry.  In the context of a JBO relationship, an introducing broker can trade *its own funds* at much higher margins than are permitted with ordinary customer trades.  Solaris wanted to take advantage of the more generous margins, but could not do so directly because it was not a licensed broker dealer.  Consequently, Solaris entered into an agreement with STG by which Solaris would contribute substantial assets into an account owned by STG (known as the "492 Account"), and then STG would allow Solaris' principals (Patrick Rooney and John Rooney) to trade on STG's 492 Account and take advantage of the greater margins afforded by STG's JBO relationship with Penson.  Penson was not involved in initiation of the agreement between STG and Solaris and had no knowledge of it until STG and Solaris informed Penson how the 492 Account would be handled.

Patrick and John Rooney did in fact trade the Solaris assets through STG's 492 Account for about a month until the Philadelphia Stock Exchange learned that John Rooney was associated with a licensed broker dealer.   John Rooney previously had been statutorily disqualified from being associated with any securities firm.   As a result of the Philadelphia Stock Exchange questioning the relationship between STG and John Rooney, STG instructed Penson to immediately liquidate the 492 Account.   Since the account was an STG account, Penson followed the instructions of its customer, STG, and liquidated the account.   Shortly afterwards, Solaris asked Penson to take Solaris as a direct customer.   Penson agreed to do so.   Once again, Solaris signed the various account agreements in which it agreed to FINRA arbitration, Texas law and payment of attorneys' fees if it did not prevail in any dispute with Penson.   See Customer Account Agreement, Appendix pages 012-013, attached as Exhibit "4" to the Thomas Affidavit, specifically Appendix page 013, paragraphs 6, 8 and 15.

Solaris eventually obtained an arbitration award against STG, which was later confirmed by judgment.   However, STG failed financially and was unable to pay the judgment owed to Solaris.   Unwilling to accept the losses resulting from its own risky investment in STG, Solaris then filed the arbitration against Penson.   The Statement of Claim was filed with FINRA Dispute Resolution Services on or about May 13, 2008 under Case No. 08-01533 naming Penson and Phil Pendergraft (one of Penson's founders and executive officers) as respondents (the "Arbitration Proceeding").   The hearings in the Arbitration Proceeding took place on June 1-4, 2009, August 3-4, 2009 and August 14, 2009.   On September 25, 2009, the arbitrators issued a unanimous award in the case (the "FINRA Award"), a copy of which is attached to the Complaint as Exhibit "A." The FINRA Award sets forth the causes of action asserted against Penson and summarizes in detail the nature of the dispute.   FINRA Award at pages 2-3 of 7.   In

the FINRA Award, the arbitrators determined that all claims against Penson and Phil Pendergraft should be dismissed with prejudice, and recommended that Phil Pendergraft's CRD record be expunged of any reference to the claims brought against him. FINRA Award at page 5 of 7, paragraphs 1.) and 4.). Further, the arbitrators correctly determined that Solaris did not prevail in its action against Penson and thus was liable to Penson in the amount of $200,000.00 (which amount represented a portion of the attorneys' fees Penson actually incurred), plus interest at the rate of 5% per annum until paid in full. FINRA Award at page 5 of 7, paragraphs 2.) and 3.). Solaris is displeased with the FINRA Award – particularly the part that requires it to pay $200,000 to Penson.

In summary, Solaris initially cleared its trades through Penson when it was a customer of TradePortal, and did so again as a customer of STG. After its relationship with STG ended, Solaris cleared its trades *directly* with Penson. All of these trades, all of the contracts involved, and all of the communications and other activities relating to the clearing of Solaris' trades, represent contacts with Dallas, Texas. Pursuant to the written account agreements between Solaris and Penson, Solaris sent its funds and assets to Penson in Dallas for Penson to hold as custodian and for Penson to use in clearing Solaris' trades. See McCain Affidavit at ¶5, Appendix page 004. As a result of all these activities, Solaris had extensive and continuous contacts with the Northern District of Texas during 2004 and 2005, the relevant years at issue in this matter.

## PROCEDURAL BACKGROUND

On October 8, 2009, Penson filed its Complaint To Confirm Arbitration Award And For Judgment (the "Texas Complaint") initiating this proceeding and seeking confirmation of the

FINRA Award.   Solaris, a Delaware limited partnership, was served on October 14, 2009 as required by Delaware law.

On November 9, 2009 – almost a month after Solaris was served – Solaris filed its Petition To Vacate Arbitration Award (the "Illinois Complaint") initiating Cause No. 1:09-cv-06817, *Solaris Opportunity Fund, LP v. Penson Financial Services, Inc.*, in the United States District Court for the Northern District of Illinois (the "Illinois Action").  A true and correct copy of the Illinois Complaint is attached as Exhibit 5 to the Thomas Affidavit at Appendix pages 014-033, and is incorporated herein by reference.  In the Illinois Complaint, Solaris is asking the court in the Northern District of Illinois to vacate the same FINRA Award that Penson is seeking to have confirmed in this proceeding.  As the Court will note, the sole ground asserted by Solaris for vacating the FINRA Award is that the arbitrators allegedly exceeded their powers awarding $200,000 in attorneys' fees to Penson, claiming that such award was on a disputed claim or controversy not cognizable at law.  See Illinois Complaint at paragraph 16, Appendix page 019.

On November 18, 2009, Solaris responded to the Texas Complaint by filing its Motion To Dismiss Or Alternatively, Transfer Venue (the "Motion") in this Court.   In the Motion, Solaris seeks (a) dismissal of this action on grounds of improper venue under Rule 12(b)(3), or, alternatively (b) transfer of this action to the Northern District of Illinois pursuant to 28 USC §1404(a).  As discussed in more detail below, the Northern District of Texas clearly is a proper venue because (a) Solaris "resides" in this district for purposes of venue analysis, and, even if it did not, (b) a substantial part of the events underlying the claims took place in the Northern District.

The §1404(a) analysis normally focuses on convenience of the parties and the interests of justice, but here there is little to analyze.  On the merits, the sole determination that must be

made by this Court is whether the FINRA Award should be confirmed.  Even Solaris' Illinois

Complaint raises no issue other than whether the arbitrators had *legal authority* to award

attorneys' fees to Penson.  In other words, there are no witnesses to be heard, no discovery to be

conducted and no aspect of this case that would justify denying Penson its choice of forum.  All

submissions should be matters of law, and there should be no evidentiary proceedings or issues

*except potentially  those raised in the context of any challenge to venue*.

## ARGUMENT AND AUTHORITIES

### A.      Venue is proper in the Northern District of Texas.

Once a defendant raises the issue of improper venue by motion, the burden of sustaining

venue lies with the plaintiff.  *Transfirst Holdings, Inc. v. Phillips,* 2007 WL 631276, at *3 (N.D.

Tex. March 1, 2007).  In the absence of an evidentiary hearing, a plaintiff meets this burden by

setting forth facts that, taken as true, establish venue. *Id.*   The Court should accept all

uncontroverted facts as true and resolve all disputed facts in favor of the plaintiff.  *Id.* Under 28

U.S.C. § 1391(a), venue is proper in the Northern District of Texas if (1) Solaris "resides" in this

district for purposes of venue, or (2) the Northern District of Texas had a substantial connection

to the claim.  As discussed below, both of these requirements are satisfied.  Since the satisfaction

of either requirement would make venue proper in the Northern District of Texas, Solaris'

Motion under Rule 12(b)(3) must be denied.

### 1.      Solaris resides in the Northern District of Texas.

For purposes of venue, a corporation resides in any district where it is subject to personal

jurisdiction when the action is commenced.  28 U.S.C. § 1391(c).  Actions involving a

partnership defendant, such as Solaris, are assessed under the corporate venue standards.  *Graf v.

Tastemaker*, 907 F. Supp. 1473, 1474 (D. Colo. 1995); *Injection Research Specialists v. Polaris*

*Industries, L.P.*, 759 F. Supp 1511, 1515-16 (D. Colo. 1991); *See Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1224 (5th Cir. 1969) (relying on Supreme Court's application of corporate venue standards to unincorporated associations to expand to corporate treatment to partnerships).   If Solaris has sufficient minimum contacts with the Northern District of Texas to subject it to personal jurisdiction here, then Solaris resides here for purposes of the venue statute. Minimum contacts are established, and the Court has personal jurisdiction, if the defendant committed at least one act in the forum state and if that act is substantially related to the suit. *See Moncrief Oil International v. Oao Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007); *Yahoo Inc. v. Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).

As shown above, on three separate occasions Solaris entered into written agreements to clear its trades through Penson in Dallas and to have Texas law apply to its dealings with Penson, thus establishing a clearing relationship with Penson that lasted well over a year.  See Thomas Affidavit at Exhibits "1," "3" and "4" (Appendix pages 007-008, 011-013).  When a customer such as Solaris clears its trades through Penson (whether through an introducing firm or as a direct customer), all of the data relevant to each individual trade execution is entered into a "front end" computer system or platform controlled by the customer, which then delivers the data to Penson's servers in Dallas County, Texas.  McCain Affidavit at ¶3, Appendix pages 003-004. Thereafter, the Penson software located on Penson servers in Dallas County, Texas processes the data and prepares standardized files for further processing by third party vendors and ultimately the Depository Trust Corporation, securities exchanges or other third parties.  *Id*.  Activity reports for Penson's customers (both introducing brokers and direct customers) are generated in Dallas, Texas.  *Id* at ¶4, Appendix page 004.  Penson's customers, including introducing brokers and direct customers, gain access to certain types of data through Penson's website, which is

registered to a Dallas address and which is hosted on servers located in Dallas, Texas. *Id.* The funds belonging to Penson's customers (both introducing brokers and direct customers) and the funds belonging to the customers of Penson's introducing brokers are maintained in Penson's custody in Dallas, Texas. *Id* at ¶5, Appendix page 004. Any stock certificates deposited by Penson's customers (both introducing brokers and direct customers) are processed and held in Dallas, Texas. *Id.* at ¶6, Appendix page 004.

Also, during the hearings in the Arbitration Proceeding, Patrick Rooney (a principal of Solaris) testified that he had repeated and systematic contacts with Penson in Dallas. See, e.g., Thomas Affidavit at Exhibit 6, at page 17 (Appendix page 037), line 23 ("I mainly called the Dallas desk"); page 19 (Appendix page 037), line 18 (when dealing with margin calls made by Penson, Mr. Rooney would do so by "talking to a couple of guys down in Dallas"); page 20 (Appendix page 037), lines 15-16 ("I ended up talking to the people in Dallas many times"); page 26 (Appendix page 039), line 13 through page 27 (Appendix page 039), line 16 (explaining how Mr. Rooney would contact Doug Throckmorton and other Penson employees in Dallas to deal with options trading issues); and page 39 (Appendix page 042), line 8 ("I spoke to Penson often").

Mr. Rooney testified that his brother, John Rooney, was "my point guy to go out and find clearing firms." *Id*. at page 61 (Appendix page 048), lines 19-20. Mr. Rooney admitted that, on at least one occasion, his brother John Rooney traveled to Dallas to meet with Penson and STG. *See id*. at page 93 (Appendix page 056), lines 13-24.

As the evidence above amply demonstrates, Solaris had substantial and repeated contacts with the Northern District of Texas that directly related to the issues raised in the Arbitration Proceeding and that resulted in the FINRA Award that Penson is seeking to have confirmed by

this Court. Solaris, therefore, is a resident of the Northern District of Texas for purposes of the venue statute, and the motion to dismiss under 12(b)(3) must be summarily denied.

> **2.     A substantial part of the claim occurred in the Northern District of Texas.**

Under Section 1391(a), venue is also proper if a substantial part of the claim occurred in the Northern District of Texas.   To determine whether a "substantial" part of the claim's activities occurred in a particular venue, the Court should look to the entire sequence of events underlying the claim, not just a single triggering event prompting the action. *See, e.g., Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (diversity claim against insurance company for losses caused by damage to yacht may be brought in district where damage occurred); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356-57 (2d Cir. 2005) ("substantial" part means significant events of omissions material to plaintiff's claim occurred in district.)   In making its determination, the Court does not ask which district among potential forums is the "best" venue. *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). Instead, the Court asks whether the district the plaintiff chose had a substantial connection to the claim, regardless of whether other districts had greater connections. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003); *see Bates*, 980 F.2d at 867; *see also Uffner*, 244 F.3d at 42 (when events underlying claim have taken place in different places, venue may be proper in several districts.)   Merely showing that another district has a more substantial connection to the plaintiff's claim is not enough to defeat the plaintiff's choice of venue. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998).

As discussed more fully in section (A)(1), above, all of the relevant Solaris and STG accounts (including the 492 Account) were cleared by Penson through its Dallas servers.   Also,

the funds belonging to Penson's customers (both introducing brokers and direct customers) and the funds belonging to the customers of Penson's introducing brokers are maintained in Penson's custody in Dallas, Texas.  McCain Affidavit at ¶5, Appendix page 004.

Thus, the funds belonging to Solaris were held in Dallas when Solaris was a customer of Tradeportal, when it was a customer of STG, when it was trading in the 492 Account, and when it was a direct customer of Penson.  During all such times, Solaris' trades were cleared through Dallas, and Solaris was bound under written agreements with Penson to have Texas law govern its relationship with Penson.  Moreover, Solaris has admitted frequent and consistent communications with Penson in Dallas to discuss trade and margin issues, and Solaris even sent its representative to Dallas for a meeting relating to the specific JBO relationship that was the subject of the Arbitration Proceeding.  There is no question that a substantial portion of the events relevant to the underlying proceeding took place in the Northern District of Texas, and therefore venue is proper under both 28 U.S.C. § 1391(a)(1) and § 1391(a)(2).[1]   Accordingly, the Motion must be denied.

**B.      Transfer is not appropriate under 28 U.S.C. § 1404(a).**

**1.      Standards.**

Under 28 U.S.C. § 1404(a), a district court may, in its discretion, transfer an action for the convenience of the parties and in the interest of justice.  The purpose of that section is to "place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration."  *Motosky v. Manning*, 2007 WL 1512027, at *2 (W.D.Tex. 2007) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239,

---

[1] Under the Federal Arbitration Act, motions to confirm or vacate arbitration awards may be brought in the district where the arbitration award was made.  *See* 9 U.S.C. §§ 9 & 10.  However, it is well-settled that these provisions are permissive, and that venue for such motions may also be proper in other judicial districts.  *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 203-04, 120 S.Ct. 1331, 1339, 146 L.Ed.2d 171 (2000).

101 L.Ed.2d 22 (1988)).   A district court is afforded broad discretion in deciding whether to

order a transfer.  *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (holding that the

decision to transfer is addressed to the discretion of the trial court and will not be reversed absent

an abuse of discretion); *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir.1987)

("[t]he district court has broad discretion in deciding whether to order a transfer").   Furthermore,

when a motion is brought challenging the plaintiff's chosen forum, the defendant has the burden

of demonstrating why the forum should be changed.  *Time, Inc. v. Manning*, 366 F.2d 690, 698

(5th Cir.1966).

The Fifth Circuit has established a two-step analysis to determine if this burden has been

met.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004); *In Re: Horseshoe Entertainment*,

337 F.3d 429, 433 (5th Cir. 2003) *cert. denied*, 540 U.S. 1049, 124 S.Ct. 826, 157 L.Ed.2d 698

(2003).   First, a district court must consider whether the judicial district to which transfer is

sought qualifies as a district in which the action "might have been brought."  *Volkswagen*, 371

F.3d at 203; *Horseshoe*, 337 F.3d at 433.   Once this threshold is established, a court may

consider whether "the convenience of the parties and witnesses" and "the interest of justice"

justify a transfer of venue.  *Volkswagen*, 371 F.3d at 203.   "The federal law contains no ...

express criteria to guide the district court in exercising its [discretionary] power."  *Gulf Oil Corp.*

*v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).   Therefore, in determining

whether transfer is warranted, courts consider a number of private and public factors, none of

which are given dispositive weight.  *Gilbert*, 330 U.S. at 508; *Volkswagen*, 371 F.3d at 203.   The

private factors considered include: the plaintiff's choice of forum; the convenience of parties and

witnesses; the cost of attendance of witnesses and other trial expenses; the location of sources of

proof; the place of the alleged wrong; the availability of compulsory process; and the possibility

of delay and prejudice if the transfer is granted. *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 789 (W.D.Tex. 2005) (citing *Volkswagen*, 371 F.3d at 203).  The public factors include: administrative difficulties related to court congestion; the local interest in having localized interests decided at home; the familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary conflict of law problems. *Id.*

      2.      **Analysis.**

      **(A)      The action could have been brought in Chicago.**

Here, there is no dispute that this action could have been brought in the Northern District of Illinois.  The Arbitration Proceeding took place there, Solaris has its principle offices near Chicago, and Penson has one employee on the floor of the Chicago Board Option Exchange.  But under the Fifth Circuit's analysis, Solaris has the burden of establishing that both prongs of the test have been met, and Solaris has fallen far short of meeting its burden under the second prong.

      **(B)      Private and public interest factors weigh against transfer.**

      **(1)      Private interest factors.**

      **(a)      The Plaintiff's choice of forum.**

Generally, a "[p]laintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed." *Time*, 366 F.2d at 698.  Therefore, "[a] plaintiff's choice of a proper forum is a paramount consideration ... and that choice should not be lightly disturbed." *Young v. Armstrong World Indus., Inc.*, 601 F.Supp. 399, 401 (N.D.Tex. 1984).   In addition, more deference to the plaintiff's selection is due when the forum selected has a legally relevant factual nexus to the plaintiff and the claims in the case. *See Spiegelberg*, 402 F.Supp.2d at 790.

As discussed above, Penson's selection of this forum was proper on two separate grounds:  First, Solaris resides in this district for purposes of venue analysis, and second, a

substantial portion of the events relevant to this proceeding took place here.   Also, Penson resides in this district.   Therefore, a legally relevant factual nexus exists between Penson and its claim on one hand, and the claim and the forum on the other.   Solaris failed to address or even mention this factor.   In that Solaris has the burden, this factor alone weighs heavily against transfer.

**(b)     The convenience of parties and witnesses.**

The sole inconvenience cited by Solaris is that "the costs it must bear for defending this claim in Dallas outweigh the potential cost to Penson of litigating in Illinois."  Solaris Brief at 7-8.  To support this, Solaris argues that it operates "from a single office in Oak Brook, Illinois" while Penson "is a worldwide company with offices in Chicago," and that Solaris "will suffer significant disruptions to its ongoing business if its manager is required to spend extended periods of time in Dallas."  Solaris Brief at 8.  Solaris fails to mention that the hedge fund it manages has millions of dollars in net asset value.  See Thomas Affidavit at Exhibit 6, page 15 (Appendix page 036), lines 10-14 (the fund's value ranged from seven to eleven million dollars in 2004).  Solaris also provides no evidence that would suggest the cost or burden on Penson traveling to Chicago would be *less than* the cost or burden of Solaris traveling to Dallas.

Litigation is usually inconvenient for the parties involved.  *Scheble v. Davenport*, 2007 WL 1893364, at *3 (N.D. Tex. June 29, 2007) (Lynn, J.).  The fact that Solaris' time and energy will be consumed by matters related to this litigation is a usual consequence of suit.  *Id*.  Transfer of venue from Texas to Illinois will not eliminate the inconvenience caused to the parties, but would merely shift the burden and expense of travel from Solaris to Penson.  *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669, 675 (E.D.Tex. 2006) ("to the extent transfer would only serve to shift the burden of location ... transfer is not appropriate"); *see also Eastman Med.*

*Prod. Inc. v. E.R. Squibb & Sons, Inc.*, 199 F.Supp.2d 590, 596 (N.D.Tex. 2002) ("the Court may not transfer venue where the result will be merely to shift the burden of the trial from one party to the other").[2]

The relative convenience to the witnesses (as opposed to the parties) is "often recognized as the most important factor" in a 1404(a) analysis. *Spiegelberg*, 402 F.Supp.2d at 790. Although the convenience of party witnesses is given some weight, "it is the convenience of *non-party* witnesses ... that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Id.* at 790- 91 (emphasis added). A defendant must "prove *with particularity*" the reasons he is inconvenienced, and with respect to witnesses, "[t]he party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Young*, 601 F.Supp. at 401 (emphasis original); *see also Eastman*, 199 F.Supp.2d at 595 (movant must identify key witnesses and the general content of their testimony to show why transfer is necessary).

Solaris offers no evidence of any inconvenience to any witnesses (party or non-party), beyond the ordinary exigencies of litigation. In discussing a different factor (sources of proof), Solaris claims that it will need testimony from "FINRA staff members assigned to the case and members of the Chicago Board Options Exchange who may be called upon to provide testimony regarding the issues in this confirmation proceeding," but Solaris fails to offer any proof of these statements or why the testimony of these persons would be required. Indeed, the only issues relevant to the confirmation of the award are matters of law. In short, there is no evidence before

---

[2] In light of the prior proceedings, Solaris' claims of inconvenience ring particularly hollow. Solaris initiated a baseless arbitration against Penson, which resulted in an award that rejected all of Solaris' claims, and ordered Solaris to pay $200,000 in attorneys' fees, plus interest, to Penson. Solaris' motion to vacate that award is equally baseless. Having initiated the underlying arbitration, Solaris is the sole cause of this litigation. To the extent that one of the parties will be inconvenienced as a result of litigating in the other's chosen forum, it is time for Solaris to be that party.

this Court that would suggest any need for live testimony of any kind. *See IBEW-NECA Southwestern Health and Benefit Fund v. Gurule*, 2003 WL 21281652, at *5 (N.D.Tex. May 22, 2003) (Ramirez, Magistrate J.) (affording the convenience of witnesses little weight "[g]iven the uncertainty of whether live testimony will even be permitted in this case"). This factor weighs against transfer.

### (c)    Witness attendance and trial expenses.

Solaris failed to address this factor and therefore failed to carry its burden. Regardless, this factor weighs against transfer for the reasons discussed above.

### (d)    The location of sources of proof.

As mentioned previously, Solaris failed to provide any evidence to support the assertions it made in connection with this factor, and therefore failed to carry its burden. Again, for the reasons discussed above, transfer should not be considered under this factor.

### (e)    The place of the alleged wrong.

Again, Solaris failed to address this factor and therefore failed to carry its burden of proof. Moreover, as set forth above, the events relevant to the underlying proceeding involved significant contacts with the Northern District of Texas. Therefore, this factor weighs heavily against transfer.

### (f)    The availability of compulsory process.

Solaris failed to address this factor. Moreover, there is no reason to believe compulsory process is an issue in connection with this matter.

**(g)     The possibility of delay and prejudice.**

Solaris also did not address this factor, and therefore failed to meet its burden of proof. Regardless, there is no reason to believe that maintaining this action in the Northern District of Texas would result in any delay or prejudice to Solaris, so this factor does not favor transfer.

**(2)     Interest of justice factors.**

As discussed previously, virtually all of the substantive issues to be presented to this Court are legal ones to be submitted as matters of law.  It is unlikely that witnesses will be needed, and no discovery should be permitted in this case.  Thus, the "private interest" factors discussed above should carry less weight than in a case where significant discovery and numerous witnesses would be expected.

Moreover, "a number of federal courts have considered [the interest of justice] factor decisive – outweighing the other statutory factors – in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction."  15 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3854 (1986).  The 7th Circuit (encompassing the Northern District of Illinois) apparently agrees, having stated that the interest of justice prong "is a separate component of a Section 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986) (citations omitted.).

Of the various factors that courts consider in the context of the interest of justice analysis, the United States Supreme Court has suggested that great weight should be given to the avoidance of multiplicity of litigation.  "To permit a situation in which two cases involving precisely the same issues or simultaneously pending in different district courts leads to the

wastefulness of time, energy and money that Section 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960).

One mechanism federal courts use to resolve situations involving duplicative litigation is the first-to-file rule.   The first-to-file rule is based on "principles of comity and sound judicial administration." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir.1997).   It "requires federal district courts--courts of coordinate jurisdiction and equal rank--to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir.1985).   The rule vests in the court in which the first of the two related actions was filed the responsibility of "determin[ing] whether subsequently filed cases involving substantially similar issues should proceed." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir.1997).   Therefore, the second-filed court should usually stay, dismiss, or transfer the action over which it is presiding in deference to the first-filed court. *See West Gulf Maritime*, 751 F.2d at 729 & n. 1, 730.   This enables the court in which the first related action was filed to "decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp.*, 125 F.3d at 920.

In *Sutter Corp.*, an arbitration proceeding was held in Dallas, Texas.   The losing party filed a motion to vacate the arbitration award in Oklahoma.   The prevailing party subsequently filed suit in Dallas, seeking to confirm the arbitration award.   The non-prevailing party moved, in Texas, to dismiss, transfer, or stay the Texas action, and the district court denied the motion.   The Fifth Circuit reversed, holding that even though the arbitration had taken place in Dallas, the district court abused its discretion in not deferring to the Oklahoma court.   "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court

to determine whether subsequently filed cases involving substantially similar issues should proceed." *Sutter Corp.*, 125 F.3d at 920 (*quoting Save Power Ltd.,* 121 F.3d at 948).

Here, Penson filed the first action in the Northern District of Texas almost a month before Solaris filed the Illinois Complaint.  There can be no dispute that the two proceedings involve the exact same parties and issues.  Thus, this Court has the responsibility of "determin[ing] whether [the] subsequently filed [Illinois Action] . . . should proceed."  *Sutter Corp.*, 125 F.3d at 920.  In that this was the first-filed suit, and Solaris has failed to overcome the presumption in favor of Penson's choice of forum, the Motion should be denied and the Court should determine that this action is the appropriate proceeding in which to address issues relating to confirmation of the FINRA Award.

Moreover, this Court has issued a prior opinion that is very instructive on these issues, *S & B Engineers and Constructors, Ltd. v. Alstom Power, Inc.*, 2004 WL 2360034 (N.D. Tex. October 19, 2004).  There are a number of factual similarities between the *S & B* case and the case at bar.  In *S & B*, two separate suits were filed in two separate federal courts, one seeking to confirm an underlying arbitration award while the other was seeking to vacate that same arbitration award.  In *S & B*, as here, the first filed suit was in the Northern District of Texas.  One significant difference was that, in the *S & B* suit, a forum selection clause in the parties' agreement called for venue in the *other* district, not the Northern District of Texas.  Here, there was no forum selection clause.

In *S & B*, this Court determined that the first to file rule applied, and that since this Court received the first filing, it should be the court to decide whether venue was proper in this district.  The court pointed out that it made no sense to litigate the parties' competing motion to vacate and motion to confirm in separate districts because "a ruling on the motion to vacate would

necessarily dispose of the motion to confirm, and vise versa." *Id.* at *2. The Court noted that "the first to file rule not only determines which court may decide the merits of substantially similar cases, but also establishes which court may decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated." *Id.* at *5. The Court went on to determine that venue was proper in the Northern District of Texas and that the Virginia action should be transferred to this district and consolidated with the Texas action. *Id.* Reaching its conclusion, the Court stated "the action in the Eastern District of Virginia should be transferred to this district, and the Court will be in contact with the Court in the Eastern District of Virginia to affect the transfer." *Id.*

The result should be identical here. Penson chose this forum as plaintiff and Penson was the first to file. Thus, the presumption in favor of Penson's choice of forum and the presumption in favor of the first-filed action combine to preclude transfer.

Added to this are the requirements of Rule 13(a) of the FEDERAL RULES OF CIVIL PROCEDURE, which requires that claims that arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim" be filed as compulsory counterclaims. Clearly, the claim by Solaris seeking to vacate the FINRA Award is a compulsory counterclaim to Penson's claim seeking confirmation of the FINRA Award. *See White Motor Corporation v. International Union*, 365 F.Supp. 314, 317 (S.D.N.Y. 1973) (action to vacate arbitrator's award was a compulsory counterclaim to an action to confirm arbitrator's award); *Arbitration between Intercarbon Bermuda Ltd.* and *Caltex Trading and Transport Corporation*, 146 F.R.D. 64, 70 (S.D.N.Y. 1993) ("the petitions to vacate and to confirm in the present case clearly arise out of the same transaction or occurrence" and therefore the petition to confirm was a compulsory counterclaim to the earlier-filed petition to vacate). Because the Illinois Complaint states a

compulsory counterclaim, this Court could properly enjoin prosecution of the Illinois Action. *See Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir. 1970); *White Motor Corporation,* 365 F.Supp. at 317.   Solaris was *obligated* to bring its claim in the Northern District of Texas as a compulsory counterclaim, but instead chose to institute duplicative litigation in the Illinois Action.   Below, we discuss the remaining interest of justice factors which, on the whole, also weigh against transfer, leading to the conclusion that transfer would be most inappropriate in this case.

### (a)      Court congestion.

Despite Solaris' attempt to make its court congestion figures seem significant, it is hard to imagine how an average caseload difference of less than ten percent could favor transfer. Moreover, the same website referenced by Solaris reveals that judges in the Northern District of Texas completed an average of 22 trials each in 2008--twice as many as the average of 11 per judge in the Northern District of Illinois, suggesting that the Northern District of Texas is very efficient at handling its caseload.

Moreover, the 5th Circuit has made clear that the possibility of delay or prejudice are relevant in deciding the propriety of transfer *only if* such circumstances are established by clear and convincing evidence.   *In Re: Horseshoe Entertainment*, 337 F.3d at 434.

Court congestion should only be considered to have significant weight if the evidence shows that getting to trial might be speedier in another district because of its less crowded docket.   *See* 15 Wright & Miller, *Federal Practice and Procedure* Section 3854 ("undoubtedly what the courts have in mind in writing opinions that give significant weight to [the element of court congestion] is that getting to trial may be speedier in another district because of its less crowded docket.").   The website referenced by Solaris shows that the median time in months

from filing to trial for civil cases in the Northern District of Illinois is 27.5, compared to 24.1 in the Northern District of Texas. At the same time, 10.2% of the civil cases in the Northern District of Illinois are over 3 years old, while only 1.9% of the cases in the Northern District of Texas have reached that age. The statistical evidence shows that the Northern District of Texas is the speedier trial docket than the Northern District of Illinois. To the extent this factor has any weight at all, it does not favor transfer.

### (b) Deciding localized interests at home.

Solaris claims that it "has never done business in the Northern District of Texas," which the evidence discussed above shows is simply a false statement. Penson resides in this district, and Penson was awarded $200,000 in attorneys' fees under the FINRA Award. Penson's activities as a clearing firm have an effect on the Northern District of Texas, and it is this district that has the greatest interest in the confirmation of the FINRA Award. This factor weighs against transfer.

### (c) The forum's familiarity with governing law.

Solaris admits that this factor does not weigh in favor of transfer. Moreover, the evidence discussed above establishes that Solaris three times agreed to the application of Texas law to its relationship with Penson.

### (d) Avoidance of unnecessary conflict of law problems.

Solaris admits that there are no conflict of law issues to address, and therefore this factor has no bearing on the analysis.

### 3.    Conclusion.

The 1404(a) analysis makes transfer inappropriate in this case.   Penson and Solaris arbitrated their dispute before FINRA arbitrators, and the panel entered an award in favor of Penson.  Penson then filed a suit to confirm the FINRA Award in this Court.   Nearly a month later, Solaris filed a suit to vacate the FINRA Award in the Northern District of Illinois.   There is no mandatory venue provision nor compelling reason for this case to be heard in the Northern District of Illinois.   Likewise, there is no hardship or injustice that would be imposed on Solaris by the case being heard in the Northern District of Texas.   To the contrary, Rule 13(a) obligated Solaris to file its claim in the Northern District of Texas as a compulsory counterclaim, but Solaris ignored its obligation and chose to institute duplicative litigation in Illinois.   Penson's choice of forum should be given great weight, but even greater weight should be afforded under the first to file rule and Rule 13(a).   Penson respectfully requests that this Court enter an order determining, pursuant to the first to file rule, that the Northern District of Texas is the first filed forum, and that the action in the Northern District of Illinois should be transferred to this Court and consolidated with this action.   As a matter of prudence and efficiency, and based upon well-established legal authority, the Motion must be denied.

WHEREFORE, PREMISES CONSIDERED, Penson respectfully requests that the Court enter an order denying the Motion, determining that venue is proper in the Northern District of Texas, determining that the Northern District of Texas is the first filed court, determining that the action in the Northern District of Illinois should be transferred to the Northern District of Texas and consolidated with this action, and granting Penson such other and further relief, general or special, at law or in equity, to which Penson may show itself justly entitled.

Respectfully submitted,


    /s/ Steven H. Thomas
**THOMAS W. CRADDOCK**
Texas State Bar No. 04695800
**STEVEN H. THOMAS**
Texas State Bar No. 19868890

**MCGUIRE CRADDOCK & STROTHER, P.C.**
500 N. Akard Street, Suite 3550
Dallas, TX 75201
Phone:  214.954.6800
Fax:  214.954.6850
E-mail: tcraddock@mcslaw.com
E-mail: sthomas@mcslaw.com

***ATTORNEYS FOR PLAINTIFF, PENSON
FINANCIAL SERVICES, INC.***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 22nd day of December 2009, a true and correct copy of the foregoing document was served electronically via the Court's ECF system, and in compliance with the Federal Rules of Civil Procedure, to the following counsel of record:

**ATTORNEYS FOR DEFENDANT:**
Frank Alvarez, Esq.
Brent W. Martinelli, Esq.
Meggan C. Burchfield, Esq.
HERMES SARGENT BATES, L.L.P.
901 Main Street, Suite 5200
Dallas, Texas 75202

/s/ Steven H. Thomas
Steven H. Thomas
